United States District Court
Southern District of Texas

**ENTERED**

February 29, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MARY CRUZ CANTU, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. 7:14-CV-757 |
| VS. | § | |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Petitioner Mary Cruz Cantu, a state prisoner proceeding pro se, initiated this action in July 2014 by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) In May 2005—more than nine (9) years before Petitioner filed this action—a jury found her guilty of aggravated robbery, and she was sentenced to 25 years' imprisonment. In seeking federal habeas corpus relief, Petitioner asserts four grounds for relief, which include claims of ineffective assistance of counsel, prosecutorial misconduct, and insufficiency of the evidence. Respondent has moved to for summary judgment, contending that the petition is time barred. (Docket No. 9.)

After carefully considering the pleadings in this case, the state court record, and the applicable law, the undersigned concludes that this action should be dismissed. As explained further below, Petitioner filed this federal habeas action many years after the applicable one-year limitations period expired, and the circumstances here do not qualify for either statutory or equitable tolling. Accordingly, it is recommended that Respondent's motion for summary judgment be granted and that this action be dismissed as untimely.

# I.  BACKGROUND[1]

**A.      Underlying Conviction**

On December 9, 2004, a grand jury in Starr County, Texas, indicted Petitioner for the offense of aggravated robbery.  The indictment alleged that on October 29, 2004, Petitioner intentionally threatened the victim by exhibiting a deadly weapon—a handgun—"while in the course of committing theft of property."  Petitioner pleaded not guilty to the indictment and proceeded to trial.

Petitioner's case was tried to a jury in late April 2005.  The jury returned a guilty verdict, and, on May 10, 2005, the state district court judge entered judgment on the jury's verdict and imposed a sentence of 25 years' imprisonment.[2]

Petitioner appealed her conviction and sentence to the Fourth Court of Appeals of Texas (San Antonio).  She asserted seven claims of error on appeal, including claims of prosecutorial misconduct, insufficiency of the evidence, and ineffective assistance of counsel.  In addressing Petitioner's claim that the evidence was insufficient to corroborate the testimony of an accomplice witness, the Fourth Court of Appeals summarized the evidence as follows:

> Rogelio Hernandez, the accomplice witness, testified that he met [Petitioner] Cantu when he installed a piece of glass to repair a window in her apartment. Cantu called Hernandez a few days later asking if he wanted to rob a house. Hernandez stated that Cantu was the mastermind of the plan to rob the victim. Hernandez, Cantu, and Hector Mendez Isaias Gomez hid at the victim's house. They were wearing masks. The victim and a young man arrived at the house. When the victim arrived, Gomez attacked the victim, and Hernandez and

---

[1] The facts and procedural history set out in the next two sections are taken from the State Court Record filed in this case, the documents submitted by Petitioner and Respondent, and the Fourth Court of Appeals' decision addressing Petitioner's direct appeal, *Cantu v. State*, No. 04-05-00473-CR, 2006 WL 2545909, at *4 (Tex. App.—San Antonio Sept. 6, 2006).  (*See* Docket Nos. 2, 7-9, 12.)

[2]  In imposing this sentence, the state district judge appears to have taken into account that the offense involved the use of a firearm and that Petitioner had two prior theft convictions, one of which was a felony involving a theft of property valued between $1,500 and $20,000.

Cantu attacked the young man. Cantu grabbed the gun the victim was carrying. They went inside the victim's house, and Gomez and Cantu took the victim and the young man upstairs to "tape them up." When the three split up the items that were stolen, Cantu kept the gun the victim had been carrying and put it under a mattress at her apartment.

The following evidence tends to connect [Petitioner] Cantu with the aggravated robbery. The victim testified that he was robbed by two men and one woman who were wearing masks. The victim testified that the woman picked up the gun he was carrying when he put it down. The victim testified that Cantu taped him with duct tape. The victim's gun was recovered under a mattress in Cantu's apartment. Accordingly, given the consistencies between the victim's testimony and the accomplice testimony in describing the events and the recovery of the gun, the evidence was sufficient to corroborate Hernandez's testimony.

*Cantu v. State*, No. 04-05-00473-CR, 2006 WL 2545909, at *4 (Tex. App.—San Antonio Sept. 6, 2006).  The court of appeals affirmed Petitioner's conviction on September 6, 2006.  Although Petitioner received an extension of time to file a petition for discretionary review (PDR) until January 8, 2007, it does not appear from the record that her counsel timely filed a PDR.[3]

**B.     State Habeas Application and Federal Habeas Petition**

On October 25, 2013, which was about seven years after Petitioner's conviction was affirmed by the court of appeals, she signed a state habeas application challenging her

---

[3]   Petitioner claims in her reply brief that her mother very recently "found" a number of pages from a PDR brief that Petitioner's counsel had drafted. (Docket No. 12, at 3, 4-5.) She describes these as "loose pages of seemingly erratic and unorganized legal arguments with no page numbers" and attaches the pages to her brief. (*Id.* at 4 and Exhibit B.)  From this, Petitioner concludes that "Respondent is well aware that a Petition for Discretionary Review was submitted, albeit late." (*Id.*)  While Petitioner's conclusion is less than clear, the record does show that counsel for Petitioner submitted a draft version of a PDR on December 28, 2006, along with a request for leave to file the final version within a few days. (*See* Docket No. 7-8, at 1-3.) Thereafter, the Court of Criminal appeals extended the deadline to file Petitioner's PDR until January 8, 2007, but it does not appear from the record that counsel actually filed the final version of the PDR. (*See* Docket No. 7-7, at 1-2.)  As reflected by the mandate issued by the Fourth Court of Appeals on April 26, 2007, Petitioner's judgment of conviction was affirmed in accordance with that court's opinion dated September 6, 2006. (Docket No. 8-30, at 90.)  In any event, whether or not a final version of a PDR was filed (or was filed late) does not alter the outcome in this case.  Either way, Petitioner filed her federal habeas petition years after the one-year limitations period expired (as discussed later in this report).

conviction.[4]  In challenging her conviction, Petitioner asserted five grounds for relief.  A state district court judge found that Petitioner's application should be denied because it did not present any previously-unresolved facts material to the conviction.   The Texas Court of Criminal Appeals denied Petitioner's state habeas application on February 12, 2014, based on the findings of the trial court.

About five months later, on July 25, 2014, Petitioner filed the instant federal petition for habeas corpus relief pursuant to 28 U.S.C. § 2254.[5]  (Docket No. 1.)  Petitioner's federal habeas claims are similar, though not identical, to the claims she asserted in her state application.  She asserts the following four grounds for relief: (1) her trial counsel rendered ineffective assistance of counsel in several ways, including leaving the courtroom during the prosecutor's closing argument, failing to timely file an election of punishment, and failing to object to the court reporter's failure to record a bench conference; (2) the State violated her constitutional rights by prosecutorial misconduct, including failing to comply with discovery orders, making impermissible arguments to the jury, and suppressing favorable evidence; (3) her Thirteenth Amendment rights were violated because there is no record showing that she was duly convicted; and (4) the evidence was insufficient to support her conviction.  (*See* Docket No. 1, Grounds One through Four.)

---

[4] Although her state habeas application was file stamped on November 1, 2013, Petitioner apparently signed it on October 25, 2013.  Giving Petitioner the benefit of the doubt, this is the earliest possible date that it could be considered filed.  *See Richards v. Thaler*, 710 F.3d 573, 578 (5th Cir. 2013) ("under Texas law the pleadings of *pro se* inmates, including petitions for state post-conviction relief, are deemed filed at the time they are delivered to prison authorities").

[5] Petitioner's federal habeas petition is considered filed on the date that she placed it in the prison mailing system.  *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) ("[A] habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing.").  It will be assumed, as Petitioner certifies, that she placed the petition in the prison mailing system the day after she signed it, so it will be considered filed as of July 25, 2014.  (*See* Docket No. 1, at 10.)  It was docketed by the Clerk on August 4, 2014.

4

In answer to the Petition, Respondent moves for summary judgment on the ground that Petitioner's federal habeas petition is time barred.  (Docket No. 9.)  Respondent also argues that any claim for equitable tolling should be denied.  (*Id.* at 6-8.)  Petitioner filed an opposition to Respondent's motion in which she argues that her petition should be considered as timely because the State was not prejudiced by her delay and because she is entitled to equitable tolling. (Docket No. 12.)

## II.  ANALYSIS

Petitions for habeas corpus relief filed in federal court after April 24, 1996, are subject to review under the amendments to the federal habeas corpus statutes as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA established a one-year period for filing habeas corpus petitions by persons in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).[6]  In most cases, the one-year period of limitation runs from the "date on which the

---

[6]  The full text of the AEDPA limitations provision reads as follows:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A).

Judgment was entered in Petitioner's case on May 10, 2005.  She filed an appeal, which was decided on September 6, 2006.  Petitioner was given until January 8, 2007, in which to file a petition for discretionary review, but she did not do so.  As such, her conviction became final on January 8, 2007.  *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) ("the one-year limitations period beg[ins] to run . . . when the [ ] period for filing a petition for discretionary review in state court end[s]").

The AEDPA limitations period expired one year later on January 8, 2008.  28 U.S.C. § 2244(d)(1)(A).  Because Petitioner did not file her federal habeas petition until July 25, 2014, this action was filed about six and a half years too late.[7]  Unless the limitations period was tolled, Petitioner's federal habeas petition is time barred.[8]  The possibility of both statutory and equitable tolling will be considered.

---

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C.A. § 2244(d).

[7] As explained previously, July 25, 2014, is the earliest date that the petition could be considered filed.  *See supra* n.5.

[8] Citing cases such as *Walters v. Scott*, 21 F.3d 686 (5th Cir. 1994), Petitioner argues that her petition is not untimely because the State has failed to show that it was prejudiced by her delay. (Docket No. 12, at 7.)  However, those cases were decided prior to the enactment of AEDPA, and the issue there was whether the State had met its burden to satisfy the equitable doctrine of laches.  The one-year limitations provision in AEDPA has no prejudice requirement.  28 U.S.C. § 2244(d)(1).

**A.      Statutory Tolling**

*1.      Pendency of State Habeas Application*

The facts of this case suggest two possible grounds for statutory tolling.  First, section 2244(d)(2) provides that the one-year limitations period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending."  28 U.S.C. § 2244(d)(2).  Here, Petitioner filed a state habeas application on October 25, 2013. However, by then the federal limitations period had already expired over five years earlier (on January 8, 2008).  Petitioner's state habeas application cannot toll the one-year limitations period because it had already expired long before that proceeding began.[9]  *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (holding that the "state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until after the period of limitation had expired").

*2.      Discovery of New Evidence*

The second possible basis for statutory tolling is Petitioner's suggestion that there is evidence showing her innocence.  Section 2244(d)(1)(D) provides that the AEDPA limitations period does not begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

One of Petitioner's claims is that there was insufficient evidence to support her conviction and that she is innocent.  (Docket No. 1, ¶ 20 (*see* Ground Four).)  Petitioner's principal basis for this claim is that the victim could not positively identify her at trial (since the robbers were wearing masks) and that he described his female assailant as weighing about 260 pounds.  (*Id.* at 6.)  Petitioner states that she weighed no more than 150 pounds.  (*Id.*)  Based on

---

[9] After the Texas Court of Criminal Appeals denied Petitioner's state application (on February 12, 2014), Petitioner waited over five months to file her federal petition (on July 25, 2015).

this, Petitioner contends that the victim described a different woman and that the accomplice who testified against her was lying.

Section 2244(d)(1)(D) does not delay the running of the limitations period here because the factual predicate of Petitioner's claim of innocence was known by her all along.  In fact, the evidence that Petitioner relies upon was presented during her trial.[10]  In other words, there is no new evidence that provides the factual predicate for her actual innocence claim.

In sum, there is no statutory basis for tolling the AEDPA limitations period in this case.

**B.**     **Equitable Tolling**

Petitioner argues that her "unusual circumstances justify equitable tolling" of the one-year limitations period.  (Docket No. 12, at 1.)

Because the one-year AEDPA limitations period is not jurisdictional, there is the possibility that it may be equitably tolled.  *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012).  "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*, 560 U.S. at

---

[10]  The jury heard this evidence, and they had the opportunity to compare the victim's description of the female assailant with Petitioner's appearance in court.  During closing argument, Petitioner's counsel made exactly the same point about the victim's testimony:

> [H]e said that there was a woman. And he said she was 5 feet 5 inches, 260 pounds. Approximately. He said exactly.  We can't hold him to exactly 260 pounds.  He said that that woman tied him up.  I would like Mary Cruz to stand up, please.  We don't have a tape but I think that she's 5, 3, 150 pounds.
> … [Objection sustained.]
> I would argue that a woman that size is about 5 foot 3.  This is argument. This is not testimony.  And about 150 pounds. You don't have to believe me.  But you have to use your common sense.  This woman [Petitioner] does not fit the description at all of the lady that assaulted [the victim.]

(Docket No. 8-23, Trial Tr. Vol. 5, at 25-26.)  The jury apparently did not find this evidence as compelling as does Petitioner since—after considering it along with all of the other evidence presented at trial—they nevertheless found her guilty.

649.   In *Holland*, the Supreme Court stressed that "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied," and that this determination is "made on a case-by-case basis." *Id.* at 650, 652.  The Fifth Circuit has explained that "equitable tolling is warranted only in 'situations where the plaintiff is actively misled by the defendant ... or is prevented in some extraordinary way from asserting his rights.'" *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013) (quoting *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002)). "The petitioner bears the burden of proving that he is entitled to equitable tolling." *Williams v. Thaler*, 400 F. App'x 886, 889 (5th Cir. 2010) (citing *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000)).

Here, Petitioner discusses several circumstances that she believes would justify equitable tolling.  She points to an October 2006 letter from her attorney to support the proposition that she expected him to file a Petition for Discretionary Review (PDR) with the Court of Criminal Appeals challenging the Fourth Court of Appeals' decision affirming her conviction.  (Docket No. 12, at 3.)[11]  The Court of Criminal Appeals had granted Petitioner an extension until January 8, 2007, in which to file a PDR.  Petitioner's subsequent letters to counsel "were unanswered," and she now believes that her attorney did file a PDR but that it was filed too late (and presumably not considered).[12]  (*Id.* at 4.)

According to Petitioner, after not hearing from her attorney, she filed an "Application for Writ of Mandamus to compel the Respondent to send her a copy of any answers filed and/or the date upon which a finding was made."  (Docket No. 12, at 6.)  The record does not reflect the

---

[11]  In citing Petitioner's reply brief in opposition to Respondent's motion for summary judgment (Docket No. 12), the specific page cites will refer to Petitioner's page numbering (although the document as filed contains some extraneous blank pages).

[12]  As previously noted, *see supra* n.3, under the circumstances here, whether or not Petitioner's counsel filed a late PDR does not affect the analysis of the limitations issue (for the reasons discussed above).

date on which Petitioner filed the mandamus application, but it does include the state district court judge's ruling, which was on March 13, 2009.  (Docket No. 12-1, at 8-9.)  The trial court's ruling reflects that the mandamus application did not request information about the status of her appeal; rather, Petitioner requested that the court "now reweigh the evidence in her favor, as she clearly wants," and to reverse her conviction.  (*Id*. at 9.)

Petitioner cites *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000), for the proposition that a delay in receiving notification that a petitioner's appeal had been denied "could qualify for equitable tolling."  (Docket No. 12, at 6.)  She states that after the denial of her mandamus application on March 23, 2009, "she did not passively await a decision"; rather, "[s]he made multiple efforts to learn English adequately."  (*Id*. at 7.)  By a letter dated April 28, 2010, Petitioner filed a motion (in English) requesting that the state district court judge commute her sentence on the basis that she was wrongfully convicted.  (*See* Docket No. 8-31, at 3-6; *see also id.* at 23 (cover letter filed with motion to commute sentence).)  In addition, on August 22, 2011, Petitioner again wrote to her trial counsel, who belatedly responded on January 13, 2012. "Immediately after receiving the January 13, 2012 letter from [counsel], Petitioner began earnestly searching for someone with the ability to construct her 11.07 writ of habeas corpus application and memorandum."[13]  (Docket No. 12, at 8.)  Petitioner believes that she "exercised reasonable diligence in attempting to protect her rights, especially due to her lack of education, Spanish being her primary language, being incarcerated, and lack of access to other forms of legal assistance."  (*Id*. at 9-10.)

---

[13]   A copy of the letter from Petitioner's former counsel is attached to her reply brief. (Electronically filed as Docket No. 12-1, at 22.)  In the letter, counsel advises that "[a] few years ago," Petitioner's mother had advised him that Petitioner was proceeding on her own with a writ of habeas corpus.  (*Id*.)  Although counsel insisted that he was still on Petitioner's side, he did not have time to help, although he expressed a willingness to respond to any questions about her case.  *Id*.

The circumstances recited by Petitioner, taken either singly or collectively, fall far short of the showing necessary for equitable tolling. To begin with, the circumstances relating to the filing (or lack of filing) of a PDR do not justify Petitioner's extraordinarily long delay in filing her federal habeas petition. It is true that in some circumstances lack of notice of a state court ruling may warrant equitable tolling. In *Phillips*, for example, the petitioner did not receive notice of the denial of his state habeas application until four months after it had been denied. *Phillips*, 216 F.3d at 511. Once he belatedly received notice from the state court, the petitioner acted "with diligence and alacrity," filing a request for an out-of-time appeal within three days of receiving notice and filing his federal petition within one month of the denial of the out-of-time appeal.[14] *Id*. The Fifth Circuit found that, under such circumstances, delay in receiving notice of a state court ruling could qualify for equitable tolling.[15] *Id*.

Here, in contrast, Petitioner has clearly failed to show that she "has been pursuing [her] rights diligently." *Holland*, 560 U.S. at 649. Petitioner does not, and cannot, claim that the state court misled her in any way regarding the time for filing her state and federal habeas petitions;

---

[14] The Fifth Circuit's ruling in *Williams* reflects another example of circumstances justifying equitable tolling. There the Texas Court of Criminal Appeals provided the petitioner "misleading" notices on three separate occasions "by telling him that his state habeas application was still pending," when in fact it was not; the petitioner "'relied to his detriment' on these representations, and he missed the AEDPA deadline as a result." *Williams v. Thaler*, 400 F. App'x 886, 892 (5th Cir. 2010) (citations omitted). The Fifth Circuit found that this was a sufficiently "rare and exceptional" circumstance to support equitable tolling. *Id*. at 893. But the existence of exceptional circumstances was not enough; the petitioner "must also demonstrate that he quickly pursued federal habeas relief after receiving delayed notice of the denial of his state habeas application." *Id*. at 891. The petitioner in the *Williams* case satisfied the diligence requirement by attempting to file his federal habeas petition within just two weeks after receiving confirmation that his state application was no longer pending. *Id*.

[15] As the Fifth Circuit has explained, "our decision in *Phillips* that equitable tolling was applicable, assuming the factual contention was resolved in petitioner's favor, was due both to the existence of circumstances beyond petitioner's control *and* to petitioner's quick and diligent actions." *Baker v. Cain*, No. 06-31177, 2008 WL 3243993, at *3 (5th Cir. Aug. 7, 2008) (emphasis in original; footnote omitted).

rather, she blames her trial attorney for not answering her letters and claims that she assumed that he was taking care of things for her.  However, when her attorney failed to respond to the letters that she sent him after October 2006, Petitioner should have taken steps to determine the status of her case.[16]  As the Fifth Circuit has observed in a related context, a petitioner must demonstrate that she "pursued the habeas corpus relief process with diligence and alacrity both before and after receiving notification" of state court proceedings.[17]  *Hardy v. Quarterman,* 577 F.3d 596, 598 (5th Cir. 2009) (citation omitted).  Petitioners "must be diligent in obtaining the status" of their state proceedings.  *Williams*, 400 F. App'x at 890 (citing *Stroman v. Thaler,* 603 F.3d 299, 302 (5th Cir. 2010); *Hardy,* 577 F.3d at 599–600).

After the deadline for filing a PDR passed (on January 8, 2007), there is no indication that Petitioner attempted to contact the state trial court, the Fourth Court of Appeals, or the Court of Criminal Appeals to determine the status of her appeal.  Petitioner's failure to make diligent inquiries about the status of her case precludes equitable tolling.  *See Stroman v. Thaler,* 603 F.3d 299, 302 (5th Cir. 2010) (holding that the petitioner was not entitled to equitable tolling where he waited eighteen months to inquire about the status of his state application).

Petitioner does not indicate how or when she became aware that no PDR had been timely filed and that her conviction was thus final.  She obviously was aware of this by the time she

---

[16]  Petitioner did in fact write to the Fourth Court of Appeals on October 3, 2006, to ask about the status of her appeal.  (Docket No. 7-17, at 1.)  There is no indication that she inquired again about her case after that date.

[17]  In *Hardy*, the Fifth Circuit addressed the circumstance in which the petitioner claimed that he received late notice of the denial of his state habeas application, which would end the tolling of the AEDPA limitations period that applies during the pendency of his state habeas application.  Here, Petitioner Cantu suggests that she did not receive notice that her conviction had become final on January 8, 2007, as a result of the failure of counsel to timely file a PDR with the Court of Criminal Appeals.  The significance of the date that Petitioner's conviction became final is that it started the running of the AEDPA one-year limitations period.  The diligence requirement applies in both of these scenarios.

filed her application for writ of mandamus in which she requested that the state trial court reconsider the evidence in her case and reverse her conviction.   In denying Petitioner's mandamus application, the state district court judge noted that she had been convicted long before and that the court lacked authority to reweigh the evidence.  (Docket No. 8-30, at 95-96.)  Although it is unclear when she filed her mandamus application, we do know that the state district court judge denied it on March 13, 2009, and that Petitioner was sent a certified copy of that order.   (Docket No. 8-30, 98-101.)   This ruling was over two years after Petitioner's conviction became final (on January 8, 2007), and thus it was long after the AEDPA one-year limitations period had expired.[18]

Notably, even after the state court's mandamus ruling, Petitioner still did not file a state habeas application.  Instead, she waited over two more years and then filed a motion to commute her sentence (on June 17, 2011).  (Docket No. 8-31, at 3-6, 23.)  She then waited yet another two years, until October 25, 2013, before at last filing her state habeas application.[19]  (Docket No. 8-31, at 27-38.)  This chronology cannot possibly support the conclusion that Petitioner "pursued the habeas corpus relief process with diligence and alacrity."  *Hardy*, 577 F.3d 598.  Equitable tolling "is not intended for those who sleep on their rights."  *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012) (quoting *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010)).

Petitioner's various explanations for her extreme delay—including her incarceration, lack of legal assistance, lack of education, and lack of proficiency in English—do not amount to an

---

[18]   In addition, the time during which Petitioner's mandamus application was pending would not have tolled the AEDPA limitations period because it was not a "properly filed" state habeas application. 28 U.S.C. § 2244(d)(2).

[19]   As noted earlier, after her state application was denied, Petitioner waited another five months before filing her federal habeas petition.  *See supra* n.9.

"extraordinary circumstance" that prevented her from timely filing her federal habeas petition.[20] The Fifth Circuit has expressly held that a petitioner's incarceration, pro se status, and ignorance of the law do not present "an extraordinary circumstance warranting equitable tolling." *Felder v. Johnson,* 204 F.3d 168, 171-73 (5th Cir. 2000).[21]   Although the Fifth Circuit does not appear to have specifically addressed equitable tolling in the context of a petitioner's ability to speak English, several other courts of appeals and many lower courts have found that lack of fluency in English is not an extraordinary circumstance that would justify equitable tolling.  *See, e.g.*, *Yang v. Archuleta,* 525 F.3d 925, 929–30 (10th Cir. 2008) (holding lack of proficiency in English is not extraordinary circumstance warranting equitable tolling); *United States v. Montano,* 398 F.3d 1276, 1280 n.5 (11th Cir. 2005) (difficulties with the English language are not "extraordinary circumstances" so as to form a basis for equitable tolling); *Mendoza v. Minnesota,* No. 03–2486, 100 F. App'x 587, 588 (8th Cir. 2004) (lack of fluency in English does not constitute an extraordinary circumstance that justifies equitable tolling); *Cobas v. Burgess,* 306 F.3d 441, 444 (6th Cir. 2002) ("An inability to speak, write and/or understand English, in and of itself, does not

---

[20]   At one point in her briefing, Petitioner also mentions "her low IQ" as contributing to her inability to file her federal habeas petition any sooner.  (Docket No. 12, at 18.)  However, there is nothing in the record to suggest that she has a low IQ.  In support of her assertion that she suffers from of lack of education, Petitioner attaches a page from a document that was apparently prepared by the state probation office in connection with her sentencing.  (Electronically filed as Docket No. 12-2, at 7.)  Under "health status," it indicates that Movant has no mental or medical impairment and that she has never been treated for any mental illness or deficiency.  (*Id.*)  Under "education status," it indicates that the highest grade she completed was "10."  (*Id.*)  Petitioner's unsupported and conclusory allegation of below average intelligence is also insufficient to support equitable tolling.   *See Smith v. Kelly,* 301 F. App'x 375, 378 (5th Cir. 2008) (conclusory assertion of mental illness did not justify equitable tolling); *see also Taylor v. Thaler,* No. 3:10–CV–2009–N–BK, 2011 WL 1045338 (N.D. Tex. Jan. 24, 2011), recommendation accepted, 2011 WL 1085160 (N.D. Tex. Mar. 22, 2011) (eighth grade education did not justify equitable tolling).

[21]   In *Felder,* the Fifth Circuit cited a pre-AEDPA case, *United States v. Flores,* 981 F.2d 231, 236 (5th Cir. 1993), for the proposition that pro se status, illiteracy, deafness, and lack of legal training are not external factors excusing abuse of the writ.  *Felder,* 204 F.3d at 171.

automatically" justify equitable tolling.); *see also Andino v. Byrd*, No. 3:15CV43-NBB-DAS, 2015 WL 4250760, at *3 (N.D. Miss. July 13, 2015) (lack of fluency in English is not a basis for equitable tolling); *Henriquez v. Dir.,_TDCJ-CID*, No. 6:13CV238, 2013 WL 5665672, at *4 (E.D. Tex. Oct. 17, 2013) (same); *United States v. Posada-Rios*, No. CIV.A. H-07-478, 2009 WL 1064156, at *1 (S.D. Tex. Apr. 16, 2009) (same); *Garcia v. Quarterman*, No. CIV A 3:07-CV-1048-L, 2009 WL 186011, at *3 (N.D. Tex. Jan. 26, 2009) (same).   Far from being extraordinary, Petitioner's circumstances are typical of many federal and state prisoners seeking habeas relief in cases filed in this District and, in particular, in the McAllen Division.[22]

Because this case presents no extraordinary circumstances and because Petitioner did not act promptly to preserve her rights, equitable tolling does not apply, and Petitioner's federal habeas claims are time barred.

### III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Docket No. 9) be GRANTED, that Petitioner's § 2254 habeas petition (Docket No. 1) be DENIED, and that this action be DISMISSED.   For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

---

[22]   In support of her equitable tolling argument, Petitioner also repeats her claim that she is actually innocent.  While a claim of actual innocence may provide "a gateway through which a petitioner may pass" when the limitations period has elapsed, "tenable actual-innocence gateway pleas are rare." *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1928 (2013). To meet the threshold requirement, a petitioner must present new evidence in support of his claim and "'show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).  Here, Petitioner points to no new evidence; rather, her arguments are all based on the evidence presented at her trial and on trial proceedings that she deems unfair.  (Docket No. 12, at 10-15; *see also supra* n.10.)  This is not one of the "rare" cases in which an actual innocence exception applies.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the recently-amended § 2254 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of a habeas corpus proceeding). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's § 2254 claims should be dismissed on procedural grounds.  For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable the conclusion that all of Petitioner's claims are barred by the AEDPA one-year limitations period.  Accordingly, Petitioner is not entitled to a COA.

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on February 25, 2016.

Peter E. Ormsby
United States Magistrate Judge